UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

DAVID GREEN, ET AL.                    CIV. ACTION NO. 3:22-00884

VERSUS                                 JUDGE TERRY A. DOUGHTY

CITY OF MONROE, ET AL.                 MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss [doc. # 20] for lack of personal jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted filed by Defendants, the City of Monroe, Louisiana; the Monroe City Council; Mayor Friday Ellis; Chief Victor Zordan; and Officer Jonathan Daniels (a/k/a "Daniel"). FED. R. CIV. P. 12(b)(2), (5)-(6). The motion is opposed. For reasons detailed below, it is recommended that the motion be granted.

<u>Background</u>

On April 2, 2022, Plaintiffs David Green; David Ruff; Ladizya Tillman; Dakedra Jones; Daijour McFee; Ladaveon McFee; and Debra Bailey, as tutrix on behalf of her minor child, J.B. (collectively, "Plaintiffs"), filed the instant wrongful death and survival action pursuant to 42 U.S.C. §§ 1983 and 1988 against various law enforcement personnel and other entities to recover damages stemming from the April 3, 2021 death of their father, David Harris (hereinafter, "Harris"), following an encounter with law enforcement that ended in tragedy. (Compl.). Plaintiffs sued the following named Defendants, the City of Monroe (hereinafter, the "City"); the City Council; City Mayor, Friday Ellis, in his official capacity; City Chief of Police, Victor Zordan, individually and in his official capacity; City Police Officer Jonathan Daniel (sometimes

spelled as "Daniels"), individually and in his official capacity; Ochsner Health LSU

Monroe/BRFHH Monroe, L.L.C. (hereinafter, "LSU Health"); LSU Health employees,

Lawrance Moore and Russell McCall, individually and in their official capacities; Ouachita

Parish Sheriff Jay Russell, in his individual and official capacities; plus several fictitiously

named liability insurance carriers, XYZ, QRS, and ABC.  *Id*.

Plaintiffs asserted two counts under 42 U.S.C. §§ 1983 and 1988 to recover

compensatory and punitive damages against Defendants for excessive force in violation of the

Fourth and Fourteenth Amendments to the U.S. Constitution.  (Compl., ¶¶ 27-35).  They also

asserted a third count against Defendants under Louisiana Civil Code Articles 2315 and 2317

[sic] for negligence and respondeat superior liability.  (Compl., ¶¶ 36-40).  Finally Plaintiffs

asserted a fourth claim for assault and battery against the Defendant officers.  (Compl., ¶¶ 41-

42).  In their Prayer, Plaintiffs requested compensatory damages, punitive damages (as to all four

claims), exemplary damages, plus reasonable attorney's fees and expenses.  (Compl., Prayer).

On April 4, 2022, Plaintiffs filed their First Amended Complaint ("FAC") that closely

tracked their original complaint, but added Defendants, Louisiana Department of Public Safety

and Louisiana State University.  *See* FAC [doc. # 2].  An "amended complaint supersedes the

original complaint and renders it of no legal effect, unless the amended complaint specifically

refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d

344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th

Cir.1985)).  Here, the FAC reasserted the allegations from the original complaint and added two

parties.  Therefore, the sole, operative complaint before the court is the amended complaint, to

which the court will apply the arguments raised by the motion to dismiss.

According to the FAC, on April 3, 2021, City Police Officer Jonathan Daniel observed the decedent, Harris. walking in the middle of the street holding up traffic.  (FAC, ¶¶ 17-25). Daniel ordered Harris to move to the rear of the police unit and to place his hands on the trunk so Daniel could obtain his identity.  *Id*.  Although Harris initially complied, he removed his hands from the trunk, which prompted Daniel to handcuff Harris and to place him in the rear of the police unit.  *Id*.  Harris's family members advised Daniel that Harris suffered from mental illness and that he should transport him to the hospital for treatment.  *Id*.  Daniel heeded the advice and proceeded to take Harris to LSU Health.  *Id*.

Upon arrival at LSU Health, however, Harris refused to exit the police unit.  *Id*. Consequently, Daniel cycled his taser, which, instead of motivating Harris's compliance, frightened him into moving to the other side of the vehicle and resisting Daniel's attempts to drag him out.  *Id*.  Nonetheless, with the assistance of two LSU officers, Moore and McCall, the officers managed to extricate Harris from the vehicle before throwing him to the ground.  *Id*. While Harris was on the ground, Moore held the back of his neck, which caused Harris to complain about the pressure on his neck.  *Id*.  The officers then directed Harris to mount a hospital stretcher that two nurses had brought to the scene.  *Id*.  Harris, however, moved away from the stretcher, whereupon Daniel used his taser to administer a six-second "drive stun," which dropped Harris to the ground.  *Id*.

Harris acceded to Daniel's ensuing command to stand up.  *Id*.  However, he then pulled away, which prompted Daniel to "taser" and drop him to the ground again.  *Id*.  While he still was on the ground, one of the LSU officers "tasered" Harris a third time.  *Id*.

At this point, Officer Daniel advised the nurses and LSU officers that "they were going to

3

OCC," and not to worry about admitting Harris to the hospital.  *Id*.  Daniel then "tasered" Harris for the fourth time, and someone removed Harris's clothes.  *Id*.  Another City Police Officer, Ashley Griffin, arrived on the scene and placed "a hobble" on Harris's legs.  *Id*.  Harris informed the officers that he could not breathe, whereupon someone rolled Harris over on to his side, which revealed blood oozing onto the concrete from Harris's forehead.  *Id*.  Despite his breathing difficulties, the officers hobbled Harris to the rear driver side door and transported him to Ouachita Correctional Center ("OCC").  *Id*.

Upon arrival at OCC, Harris was taken inside and held up by a deputy sheriff.  *Id*. Nurses at the OCC observed Harris drooling and "took his pulse which was faint and blood pressure but could not get a reading subsequently succumbed to death."  *Id*. [sic].  An autopsy determined that Harris had two areas of blunt force trauma to the back of the neck.  *Id*.   The cause of death was deemed a homicide.  *Id*.

On April 6, 2022, the Clerk of Court issued Plaintiffs a deficiency because they failed to file a cover sheet with their complaint, as amended.  (Notice of Deficient Document [doc. # 3]). Plaintiffs, however, ignored the Notice.  Accordingly, on May 4, 2022, the Court issued an order striking the complaint and closing the case.  (May 4, 2022 Order [doc. # 5]).  Almost two months later on June 29, 2022, Plaintiffs filed a motion to reinstate the case, which the court granted. [doc. #s 6-7].

On September 22, 2022, Defendants, the City; the City Council; City Mayor Friday Ellis; City Police Chief Victor Zordan; and City Police Officer Jonathan Daniel(s) (collectively, the "City Defendants") filed the instant motion to dismiss for lack of personal jurisdiction, insufficient service of process, and for failure to state a claim upon which relief can be granted,

wherein they seek dismissal on the following grounds:

1)  Plaintiffs improperly served Chief Zordan and Officer Daniel;

2)  the City Council lacks capacity and, thus, cannot be sued;

3)  Plaintiffs fail to state a claim against Zordan in his individual capacity, because they did not allege that he had any personal involvement in Harris's death;

4)  Plaintiffs do not state a claim against the City under federal law/*Monell* for any unconstitutional policies, practices, or custom;

5)  the City is immune from liability for negligent hiring, training, and supervision under state law; and

6)  Plaintiffs are not entitled to punitive damages under state law and cannot recover them from the City under federal law.

On October 13, 2022, Plaintiffs filed an opposition [doc. # 25] to the motion to dismiss, which the Clerk of Court marked as deficient because it did not include a table of contents and a table of cases, as required by Local Rule 7.8.  *See* Notice of Deficient Document.  [doc. # 27]. The Notice added,

> **Please electronically submit a "Corrective Document" <u>within 10 days</u> from the date of this notice or the document may be stricken by the court.  <u>PLEASE ENTITLE THE SUBMISSION, "CORRECTIVE DOCUMENT."</u>** All filing deadlines previously set remain in effect. Issuance of this deficiency does not amount to an extension of any deadline.  The City Defendants request dismissal of Plaintiffs' claims as set forth below.

*Id*.

On October 24, 2022, Plaintiffs submitted a new opposition memorandum that included the missing elements of the original brief, but also made revisions and included additional documentation.  *See* Pl. Opp.  [doc. # 30].  Thus, in effect, Plaintiffs filed their brief eleven days beyond the court-imposed October 13 deadline to file a response to the motion.  *See* Notice of Motion Setting [doc. # 22].

On October 27, 2022, the City Defendants filed a reply brief wherein they asked the court to reject Plaintiffs' attempt to submit a new, essentially out-of-time response brief,[1] and also, re-urged their grounds for dismissal. (Defs. Reply Memo. [doc. # 31]).

## Discussion

### I.    Insufficient Service of Process

Chief Zordan and Officer Daniel seek dismissal of Plaintiffs' claims against them for insufficient service of process and for lack personal jurisdiction stemming from the invalid service of process. FED. R. CIV. P. 12(b)(4) & (5). They contend that Plaintiffs did not perfect service against them for purposes of Plaintiffs' individual and official capacity claims. However, because Plaintiffs' official capacity claims against Zordan and Daniel are subject to dismissal on other grounds, *see* discussion, *infra*, the court's consideration of insufficient service of process is limited to the individual capacity claims.

a)    Guiding Principles

A motion under Rule 12(b)(5) is proper to challenge the sufficiency of service. When service is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service. *Kitchen v. Walk-On's Bistreaux & Bar*, No. 19-1062, 2020 WL 2404911, at *3 (W.D. La. May 12, 2020) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). "A return of service is prima facie evidence of the manner of service. Unless some defect in service is shown on the face of the

---

[1] The court will consider Plaintiffs' superseding brief, but counsel is cautioned that she should comply with the court rules and deadlines. If, in the future, counsel seeks to revise the memorandum and not merely correct it, she should file a motion for leave with the deficiency period.

return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible

evidence establishing the lack of proper service." *Flores v. Koster*, Civ. Action No. 11-0726,

2013 WL 4874115, at *2 (N.D. Tex. June 28, 2013) (internal citations omitted).

"The Court may consider affidavits or declarations in resolving Rule 12(b)(5) motions."

*Walk-On's*, 2020 WL 2404911, at *1 (citations omitted). Without valid service of process,

"proceedings against a party are void because a court cannot exercise personal jurisdiction over a

defendant unless he was properly served." *Landry v. Garber*, Civ. Action No. 19-0367, 2019

WL 2946149, at *2 (W.D. La. June 21, 2019), *R&R adopted*, 2019 WL 2943409 (W.D. La. July

8, 2019) (citing *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d

434, 435 (5th Cir. 1981)); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97,

104 (1987).

      b)    <u>Law and Analysis</u>

When, as here, plaintiffs seek to serve an individual such as Zordan and Daniel, in their

individual capacities, service must be perfected pursuant to Rule 4(e),[2] which provides that,

> [u]nless federal law provides otherwise, an individual . . . may be served in a judicial
> district of the United States by:
>
> **(1)**    following state law for serving a summons in an action brought in courts of
> general jurisdiction in the state where the district court is located or where service
> is made; or
>
> **(2)**    doing any of the following:
>
>     **(A)** delivering a copy of the summons and of the complaint to the individual
> personally;
>
>     **(B)** leaving a copy of each at the individual's dwelling or usual place of abode

---

[2] *Dougherty v. Dupes*, Civ. Action No. 17-1541, 2018 WL 1696651, at *5 (M.D. Pa. Apr. 6, 2018).

with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e).

In response to the City Defendants' motion, Plaintiffs submitted an affidavit from Dewey Street, who averred that he served Zordan and Daniel on August 1, 2022, through Zordan's secretary, Tomeka Brown. (Affidavit of Dewey Street; Opp. Brief, Exh. [doc. #30-3]). According to Dewey, when he asked Brown whether she could "take service," she replied that she "was able to sign." *Id*.

In support of their motion, the City Defendants submitted declarations from Zordan, Daniel, and Monroe Police Sergeant Whitney Hebert. (Decls.; M/Dismiss, Exhs. [doc. # 20-2]). Zordan averred that he found a stack of papers related to this suit on his desk, but he does not know who placed them there or how they arrived. *Id*. He did not receive a copy of any documents related to this suit from any other person or source. *Id*. Furthermore, he did not authorize anyone at the Monroe Police Department to accept service on his behalf for suits filed against him. *Id*.

Daniel averred that, on an unknown date, he received a stack of papers related to this suit from his supervisor, Sergeant Whitney Hebert, during a pre-shift briefing. *Id*. Daniel did not receive a copy of any documents related to this suit from any other person. *Id*. Furthermore, Daniel did not authorize anyone at the Monroe Police Department to accept service on his behalf for suits filed against him. *Id*.

Sergeant Hebert confirmed that, on an unknown date, he found a copy of suit-related documents in the briefing room, which he delivered to Daniel. *Id*. However, he did not know

8

how the documents arrived there.  *Id.*

Plaintiffs have not argued, let alone shown that either Zordan or Daniel were served personally or that a copy of the original or amended complaint was left at Zordan or Daniel's respective dwellings or usual places of abode with someone of sufficient age and discretion.  *See* FED. R. CIV. P. 4(e)(2)(A)-(B).  Plaintiffs also did not establish that they perfected service against Zordan or Daniel, in their individual capacities, in accordance with Louisiana law.  *See* FED. R. CIV. P. 4(e)(1) and LA. CODE CIV. P. ARTS. 1232-1235.   "Service on a police department, other officers or police station staff is generally insufficient to effect service on a police officer sued in his individual capacity."  *Brown v. Lafayette City-Parish Consol. Gov't*, Civ. Action No. 13-2436, 2014 WL 1212699, at *1 (W.D. La. Feb. 28, 2014) (collecting cases).

Moreover, in response to the City Defendants' motion challenging the sufficiency of service, Plaintiffs did not prove that Zordan's alleged secretary, Brown, was designated by law to accept service on behalf of Zordan or Daniel, in their individual capacities.  *See* FED. R. CIV. P. 4(e)(2)(C).  Once challenged, a conclusory allegation that the person served was designated/appointed by law to accept does not suffice to establish proper service.  *See Ruiz v. Rhode Island*, Civ. Action No. 16-507, 2018 WL 514539, at *2 (D.R.I. Jan. 22, 2018) (plaintiff failed to point to law that authorized state attorney general office to accept service for defendants in their individual capacities).  Furthermore, even if the person served represented to the process server that she was authorized to accept service on defendant's behalf, proof of an *actual* agency or authorization is required.  *Wagster v. Gauthreaux*, Civ. Action No. 12-0011, 2013 WL 5554104, at *2 (M.D. La. Oct. 7, 2013); *Clark v. Stat Care Clinics, L.L.C.*, Civ. Action No. 17-306, 2020 WL 1027145, at *4 (M.D. La. Mar. 3, 2020), *appeal dismissed,* 2020 WL 5642030

(5th Cir. June 25, 2020) (agent must have actual authorization and not merely represent themselves to be authorized in order to be an agent for service of process).

Here, Zordan has rebutted Plaintiffs' process server's statement that Zordan's secretary, Tomeka Brown, told him that "she was able to sign." Further, even though Zordan and Daniel acknowledge that they eventually received the service documents, that does not cure the failure to properly serve them with the documents in compliance with the Rules. *See N. States Power Co. v. TriVis, Inc.*, 224 F.Supp.3d 807, 810 (D. Minn. 2016) (actual notice of the suit does not cure deficiencies in the service of process) (citations omitted). Moreover, this court has held previously that an attempt to serve Zordan and other City of Monroe Police officers by leaving the service documents with "Tomika Brown" is improper and insufficient. *See Jackson v. Victor Chief Zordan*, Civ. Action No. 21-03017, 2022 WL 3971063, at *5 (W.D. La. Aug. 15, 2022), *R&R adopted* 2022 WL 3931458 (W.D. La. Aug. 30, 2022).[3]

Ultimately, Plaintiffs do not really argue that they properly served Zordan and Daniel for purposes of their claims against them in their individual capacities. Instead, they cite Louisiana Code of Civil Procedure Article 1265, which provides that service "on any political subdivision . . . is made at its office by personal service upon the chief executive officer thereof, or in his absence upon any employee thereof of suitable age and discretion." LA. CODE CIV. P. ART. 1265. By its terms, however, Article 1265 contemplates service for purposes of the political subdivision. Here, however, the City Defendants do not contest service on the City itself.

Further, even if Plaintiffs did serve Zordan and Daniel in their official capacities, that

---

[3] Plaintiffs certainly cannot profess surprise with this decision because they are represented by one of the same attorneys who represented the plaintiff in *Jackson, supra*.

does not equate to service for the purpose of Plaintiffs' individual capacity claims against them. Rather, "where a defendant is sued in both his individual and official capacities, . . . the defendant is entitled to receive service of process in both capacities.  Service in one capacity does not confer jurisdiction over the other capacity, even though the defendant is fully aware of the suit." *Cheeks v. Belmar*, 331 F.R.D. 499, 504 (E.D. Mo. 2019) (citations and internal quotation marks omitted); *Monte Nido Missouri LLC v. St. Louis Cty., Missouri*, Civ. Action No. 20-1491, 2020 WL 6703289, at *1 (E.D. Mo. Nov. 13, 2020) (plaintiff sued defendant in official and individual capacities, but only served him in official capacity); *Ruiz, supra* ("effecting service on someone in his official capacity does not ipso facto do so in his individual capacity, and vice versa") (citations omitted).

      c)     <u>Dismissal</u>

Under Federal Rule of Civil Procedure 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)."  FED. R. CIV. P. 4(c)(1).  Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*  Good cause "requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'"  *Gartin v. Par Pharm. Companies, Inc*., 289 Fed. App'x 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).

Here, the City Defendants filed the instant motion to dismiss in September 2022. Apparently recognizing that their service attempt on Zordan and Daniel was ineffective, Plaintiffs, in their opposition brief, requested an extension of time to effect service. However, over five months have passed since the filing of this motion, and Plaintiffs have not filed proof of subsequent proper service. At this point, the case is approaching its one-year anniversary and Plaintiffs have not shown good cause for the continued service omissions. Furthermore, Plaintiffs did not advance any equitable grounds for continued forbearance.[4]

## II.    Lack of Personal Jurisdiction

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350; 119 S.Ct. 1322, 1327 (1999) (citation omitted). Similarly, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104; 108 S.Ct. 404, 409 (1987).

Here, Plaintiffs did not properly serve Zordan and Daniel in their individual capacities. Accordingly, the court lacks personal jurisdiction to entertain Plaintiffs' individual capacity claims against them. FED. R. CIV. P. 12(b)(2).

---

[4] While the court does not reach Zordan's argument for dismissal on the merits, *see* discussion, *infra*, Plaintiffs did not proffer any creditable response to Zordan's contention that the Complaint, as amended, contains no factual allegations regarding his personal involvement in the events at issue in this case. In other words, Plaintiffs will not suffer material prejudice from Zordan's dismissal.

### III.    Failure to State a Claim

a)    <u>Standard</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  FED. R. CIV. P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.*

b)    Individual Capacity Claims Against Chief Zordan

In the City Defendants' omnibus motion to dismiss, Zordan also requested dismissal of Plaintiffs' individual capacity claims against him on the merits.  Personal jurisdiction, however, is "an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584; 119 S.Ct. 1563, 1570 (1999) (citation and internal quotation marks omitted).

In the absence of personal jurisdiction over Zordan, as recommended here, the court is unable to reach Zordan's further or alternative motion to dismiss for failure to state a claim upon which relief can be granted.  *See Walk-On's, supra* (court lacked jurisdiction to consider defendant's remaining Rule 12(b)(6) arguments).

c)    Official Capacity Claims against Zordan, Daniel, and Ellis

A suit against a municipal officer in his official capacity is simply another way of alleging municipal liability because a judgment in a § 1983 suit against an officer in his official

14

capacity imposes liability against the entity he represents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018 (1978); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014). Therefore, "[w]hen . . . the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them." *Ferguson v. Gates*, 602 F.Supp.3d 942, 950 (W.D. La. 2022) (quoted source omitted); *Lehman v. Guinn*, Civ. Action No. 20-0736, 2021 WL 935887, at *10 (W.D. La. Feb. 9, 2021), *R&R adopted,* 2021 WL 929885 (W.D. La. Mar. 10, 2021); *Faul v. Fontenot*, Civ. Action No. 19-1221, 2020 WL 4929358, at *3 (W.D. La. Aug. 4, 2020), *R&R adopted,* 2020 WL 4929323 (W.D. La. Aug. 21, 2020).

In this case, the Plaintiffs have sued the City directly as a separate Defendant. Accordingly, their official capacity claims against City officials and employees are redundant, superfluous, and subject to dismissal on that basis.

Furthermore, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). The proper defendant for a § 1983 *Monell* claim is the "official or government body with final policymaking authority over the person who committed the violation." *Lester v. Caddo Par.*, Civ. Action No. 15-2008, 2017 WL 6610329 (W.D. La. Dec. 27, 2017) (citing *inter alia*, *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999)). Therefore, an official capacity suit is viable *only* against the person(s) who is responsible for formulating official policy that caused the constitutional violation. *Stuart v. Russell, et al.*, Civ. Action No. 21-

01231, 2021 WL 4820244, at *4 (W.D. La. Oct. 15, 2021) (citations omitted).

Here, Plaintiffs did not set forth facts to suggest that Zordan and Daniel were delegated "final policy making authority" for the actions at issue in this case, such that their decisions represent the official policy of the local government unit. Accordingly, they may not be sued in their official capacities. *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750–51 (5th Cir. 2023) (citations omitted); *see also World Wide St. Preachers' Fellowship v. Town of Columbia, La.*, Civ. Action No. 05-0513, 2008 WL 920721, at *9 (W.D. La. Apr. 3, 2008).

      d)    <u>City Council</u>

The City Defendants seek dismissal of the Monroe City Council because it lacks the capacity to be sued. Under Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." FED. R. CIV. P. 17(b). Thus, the law of Louisiana controls here. *See, e.g., Union Pac. R.R. Co. v. Taylor Truck Line, Inc.*, Civ. Action No. 15-0074, 2016 WL 7480504, at *3 (W.D. La. Oct. 31, 2016), *R&R adopted*, 2016 WL 7473776 (W.D. La. Dec. 28, 2016). To have the capacity to be sued under Louisiana law, an entity must qualify as a "juridical person." *Id.* (citing *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir. 2006)). A "juridical person" is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE ART. 24. "[I]n the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Brown v. City of Alexandria*, Civ. Action No. 17-0798, 2018 WL 2425097, at *2 (W.D. La. May 29, 2018) (citations omitted).

The Monroe City Council is vested with the "legislative power" of the City. MONROE CITY CHARTER § 2-01(A). Apart from a conclusory statement to the contrary, Plaintiffs

provide no facts or authority to support their contention that the Monroe City Council is a distinct juridical person from the City itself, with the legal capacity to sue and be sued. Instead, Louisiana courts consistently have reasoned that city councils are not separate government units with the capacity to sue or be sued. *U.L. Coleman Co., Ltd. v. Bossier City-Par. Metro. Planning Comm'n*, Civ. Action No. 08-2011, 2009 WL 3518173, at *2 (W.D. La. Oct. 29, 2009); *Brown v. City of Alexandria*, Civ. Action No. 17-0798, 2018 WL 2425097, at *2 (W.D. La. May 29, 2018) (collecting cases);[5] *Port Marigny, LLC v. City of Mandeville*, Civ. Action No. 17-4727, 2018 WL 1757385, at *6 (E.D. La. Apr. 12, 2018) (Mandeville City Council was not juridical entity capable of being sued because it had a "mayor-council" form of government where the city council served as the legislative branch of the city government).

In short, the Monroe City Council lacks the capacity to be sued, and Plaintiffs' claims against it are subject to dismissal on that basis. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 3114 (5th Cir. 1991) (affirming district court's dismissal of a defendant, with prejudice, because it could not be sued as an independent entity).

   e)    *Monell* Claims Against the City

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir.2022) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A

---

[5] Again, counsel for plaintiffs in *Brown v. City of Alexandria* also represents Plaintiffs in this case. Counsel made no effort to distinguish *Brown*.

municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior. Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

> The official policy requirement may be met in various ways. An "official policy" means:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Plaintiffs do not identify an officially promulgated policy that instructed police to engage in the alleged unconstitutional use of force at issue here. Consequently, they necessarily "rely on a custom or practice so common and well settled as to constitute a custom that fairly represents municipal policy, and [a]ctual or constructive knowledge of such custom must be attributable to the policymaker." *Armstrong, supra* (citations and internal quotation marks omitted). In other words,

> to find a municipality liable for a policy based on a pattern, that pattern must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is

18

the expected, accepted practice of city employees.  A pattern requires similarity, specificity, and sufficiently numerous prior incidents.

*Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir.2017), *as revised* (Mar. 31, 2017) (citations and internal quotation marks omitted).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."  *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).  "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted).  Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to his own injury.  *Id*. (citation omitted).  In fact, "isolated acts cannot establish the existence of a custom or practice."  *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).  Rather, prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectional conduct is the expected, accepted practice."  *Id*. (citation omitted).

In this case, Plaintiffs allege that the City "fail[ed] to implement appropriate policies and procedures on the use of force" considering past incidents that allegedly occurred.  (FAC, ¶ 26(c)).  Plaintiffs point to four preceding events:  1) the "shooting" of William Henderson, a "mentally challenged person who posed no threat to the police"; 2) "kicking and beating a known but unnamed [j]uvenile" at the Pecanland Mall on an unidentified occasion; 3)

"[s]lapping, [p]unching/hitting" an unknown and unidentified "arrestee" on an unidentified

occasion; and 4) "[k]icking in the head and beating Timothy Williams." *Id*.   Plaintiffs further

include a blanket assertion that MPD officers "used excessive/deadly force" on other non-

threatening individuals.  *Id*.

Public records show that the event involving William Henderson occurred in August

2004.  *See Henderson v. City of Monroe*, No. 05-3762 (4th J.D.C.); M/Dismiss, Exh. 2 [doc. # 20-

3].  However, the court ultimately determined that the use of force was objectively reasonable.

*Id*.   The second two incidents in the FAC (the incident involving an unnamed juvenile and

unnamed arrestee) are undated, unnamed, and no context is provided.  In other words, Plaintiffs

do not plead when the alleged violations occurred, how those instances relate to this instance, or

how those instances put the City on notice that the constitutional violation that allegedly

occurred here was part of an ongoing pattern.

Finally, the Timothy Williams incident occurred in April 2020.  *See Williams v. City of*

*Monroe, et al.*, Civ. Action No. 21-1061 (W.D. La.).  In the *Williams* case, however, the

defendant officer ran up and kicked a compliant and non-resisting suspect and then proceeded to

pound his head to the concrete.  *Id*.  Moreover, there is no indication that the plaintiff in *Williams*

suffered from a mental condition that prompted the officer to resort to force.  *Id*.

Upon consideration, Plaintiffs' allegations fall materially short of demonstrating a custom

or practice that is so frequent and prevalent that the City must have been aware of and accepted

the disputed conduct.  *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010)

(citation omitted).  Plaintiffs provided context for only two identified instances of past conduct.

However, in one case, the officer's use of force was objectively reasonable, whereas, in the

other, the circumstances were dissimilar.  *See Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 810 (5th Cir. 2017) (the specific examples identified do not resemble—with sufficient similarity—the constitutional violations alleged as required to establish the required pattern of unconstitutional conduct); *Saenz v. City of El Paso*, 637 Fed. App'x. 828, 832 (5th Cir. 2016) (allegations of twenty-one previous incidents, spanning a period of nineteen years, without further context, does not suffice for the court to draw the reasonable inference that these events were anything more than isolated incidents).

Moreover, even if the prior incidents were sufficiently detailed and analogous, only four instances of alleged excessive force over at least a sixteen-year period does not reflect a pattern that can be said to represent an official policy of condoning excessive force.  *Peterson*, 588 F.3d at 852; *see also Armstrong*, 60 F.4th at *10 (nine constitutional violations over a 24-year period and thousands of prosecutions are hardly sufficient to show a municipal custom); *Wilder v. Morgan*, Civ. Action No. 20-1383, 2022 WL 839128, at *5 (W.D. La. Mar. 18, 2022) (allegations that over a ten-year period there were 107 lawsuits filed against the police department and 1,1172 use-of-force reports filed by officers does not suffice to establish a pattern without additional context).  As in *Peterson, supra*, Plaintiffs fail to set forth the size of the City's police force or indicate how many arrests were made between 2004 and 2021.  *Id.*[6]

---

[6] Citing *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006), Plaintiffs argue that, at the pleading stage, they need only comply with Rule 8's notice requirements such that boilerplate allegations of *Monell* liability will suffice.  However, as another district court has observed, *Mack* predates the Supreme Court's seminal decisions in *Twombly* and *Iqbal* that upended established Rule 8 pleading practices.  *Poullard v. Gateway Buick GMC LLC*, Civ. Action No. 20-2439, 2021 WL 2376721, at *8 (N.D. Tex. June 10, 2021).  In addition, the Fifth Circuit has evolved to become stricter with its pleading requirements for a municipal custom.  *Id.* (citations omitted).  Accordingly, it is manifest that in the wake of *Twombly* and *Iqbal*, "boilerplate" allegations do not suffice to support a claim for relief.  *Id.*

Plaintiffs also contend that the City failed to train or supervise its officers on the "limitations regarding the use of excessive force [including tasers] when apprehending individuals with mental illness and substance abuse issues . . ." (FAC, ¶ 26(g)). They add that the City was deliberately indifferent towards their failure to train officers "in light of known uses of unlawful physical force and violence in the past against other citizens . . ." *Id.*

A failure to train or supervise claim represents yet another type of *Monell* claim. *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021); *see Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) ("The standard applicable to a failure-to-train claim is the same as the standard for municipal liability."). The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* (citation omitted). A failure-to-train claim requires plaintiff to "prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson, supra* (citing *Peña,* 879 F.3d at 623)); *Armstrong, supra.*

Deliberate indifference normally entails a "pattern of similar constitutional violations by untrained employees." *Id.* (citation omitted). But even when evidence of a pattern is missing, "it

---

Plaintiffs further maintain that their allegations are "extrapolated from the Northeast Louisiana Sheriff's Investigative Report which investigated this incident and interviewed numerous witnesses and completed a report here attached." (Pl. Opp. Memo., pgs. 14-15). However, Plaintiffs did not attach the report. Moreover, if the report contained material facts to support their claims, Plaintiffs should have amended their complaint to include those facts.

is still possible to establish deliberate indifference through the single-incident exception." *Id.* (citation omitted). The single-incident exception for a failure-to-train claim, however, is "extremely narrow." *Id*. (citing *Valle, supra*). To succeed, the "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* Thus, for a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Hutcheson, supra* (citing *Littell v. Hous. Indep. Sch. Dist.,* 894 F.3d 616, 624-25 (5th Cir. 2018). Ultimately, the single-incident exception *in the failure to train* context, "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Id*. (citing *Peña*, 879 F.3d at 624).

Here, Plaintiffs have failed to allege a pattern of similar constitutional violations by purported untrained employees. *See* discussion, *supra*. Furthermore, they did not allege facts to plausibly suggest that Daniel was provided no training whatsoever and that the training omission resulted in the constitutional deprivation at issue. *See Hutcheson, supra*; *Peña, supra*.

In addition to the single-incident exception to the failure-to-train claim, "[i]t is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus,* 419 F.3d 348, 352 (5th Cir. 2005); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; 106 S.Ct. 1292, 1298 (1986). Further, "[a]lthough a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create municipal liability only if the municipal actor is a final policymaker." *Louisiana Div. Sons of Confederate*

23

*Veterans v. City of Natchitoches*, 821 Fed. App'x. 317, 320 (5th Cir. 2020) (citation omitted).

Here, however, there is no indication that Daniel or Zordan were final policymakers for the City.

In sum, Plaintiffs fail to state a claim for municipal or *Monell* liability under § 1983 against the City.

      f)      <u>State Law Tort Claims Asserted Directly Against the City</u>

Plaintiffs assert state law claims against the City for negligent hiring, training, and supervision of its officers. (FAC, ¶¶ 39(E)-(H), 41-42). The City seeks dismissal of these direct negligence claims because they purportedly are barred by the Louisiana public-entity discretionary immunity statute, Louisiana Revised Statute § 9:2798.1, and because Plaintiffs did not allege sufficient facts to support a claim for relief.

Considering first the discretionary immunity statute, the court observes that it represents an affirmative defense that must be specifically pled, and, consequently, the defendant bears the burden of proving that statutory immunity applies. *Beroid v. LaFleur*, Civ. Action No. 21-0516, 2022 WL 2826228, at *7 (W.D. La. June 2, 2022), *R&R adopted,* 2022 WL 2818930 (W.D. La. July 19, 2022). Further,

> [w]hen a defendant invokes this discretionary function immunity as an affirmative defense, a court must initially determine whether the governmental agency had a choice or discretion regarding whether to follow a particular course of action. If a statute, regulation, or policy dictated the governmental agency's action, then immunity does not apply. However, if there was no prescribed duty, the defendant must then introduce evidence at trial that the choice was grounded in social, economic, or political policy.

*Fetty v. Louisiana State Bd. of Private Sec. Examiners*, Civ. Action No. 18-0517, 2020 WL 520026, at \*13 (M.D. La. Jan. 31, 2020) (internal citations and quotation marks omitted). Clearly, the City has not made the requisite showing here.[7]

However, the City's second basis for dismissal fares better than the first. "'A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used in Louisiana for negligence claims." *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021) (citation omitted). To prove negligence under the duty-risk analysis, the plaintiff must establish:

> 1) the conduct in question was a cause-in-fact of the resulting harm, 2) the defendant owed a duty of care to the plaintiff, 3) the defendant breached that requisite duty and 4) the risk of harm was within the scope of protection afforded by the duty breached. If the plaintiff fails to prove any one of the elements, the defendant is not liable.

*McGuire v. New Orleans City Park Imp. Ass'n*, 835 So.2d 416, 421 (La. 2003) (internal citations omitted).

In the FAC, Plaintiffs do not allege any facts to support their claim that the City was negligent in its hiring, training, and supervision of officers, or that any such breach was a cause-in-fact of Harris's injuries. To the contrary, the allegations are purely conclusory, which does

---

[7] Plaintiffs need not plead facts to overcome affirmative defenses. *See Jones v. Bock,* 549 U.S. 199, 216; 127 S.Ct. 910, 921; (2007) (exhaustion is an affirmative defense that plaintiffs need not specifically plead in their complaints); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (plaintiff's pleadings need not identify elements that relate to affirmative defense). Rather, it is defendant who bears the burden of pleading an affirmative defense. *See Gomez v. Toledo*, 446 U.S. 635, 640; 100 S.Ct. 1920, 1924 (1980) (citing *inter alia*, Fed. R. Civ. P. 8(c)).

not suffice to state a claim for relief.  *See* FAC, ¶¶ 39(E)-(H), 41-42; *Santangelo v. Omni Hotels Mgmt. Corp.*, Civ. Action No.18-11263, 2018 WL 6448842, at *4 (E.D. La. Dec. 10, 2018) ("plaintiffs allege no facts supporting an inference that the defendant knew or had reason to know that their employees were unfit to perform their jobs, that the employees were not properly supervised, or that they were not adequately trained").[8]

      g)      <u>Punitive and Exemplary Damages, Plus Attorney's Fees under State Law</u>

It is manifest that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Furthermore, punitive or exemplary damages are not allowable under Louisiana law against any defendant unless expressly provided for by statute.  *Albert v. Farm Bureau Insurance Company*, 940 So. 2d 620, 622 (La. 2006).  "In the absence of such a specific statutory provision, only compensatory damages may be recovered."  *Evans v. Vill. of Creola*, No. 18-0983, 2019 WL 639174, at *4 (W.D. La. Jan. 22, 2019), *R&R adopted*, 2019 WL 639162 (W.D. La. Feb. 14, 2019).  Although Louisiana has authorized exemplary damages in certain types of cases, *see* LA. CIV. CODE ARTS. 2315.3, *et seq.*, Plaintiffs have not established that Defendants' alleged conduct falls within any of these provisions.[9]

Likewise, attorney fees are not allowed under Louisiana law except where authorized by

---

[8] In their brief, Plaintiffs argue that the City is vicariously liable for Officer Daniel's actions.  (Pl. Opp. Brief, pgs. 16-17); LA. CIV. CODE ART. 2320.  However, the City is not seeking dismissal of Plaintiffs' vicarious liability claims, at this time.  *See* Reply Brief, pg. 9 n.8.

[9] In response to the City Defendants' motion, Plaintiffs argue only that they have a viable claim for punitive damages under § 1983 against municipal employees when they are sued in their individual capacities.  However, the City Defendants are not seeking dismissal of any punitive damages claim against Officer Daniel under federal law at this time.  *See* discussion, *supra*.

statute or contract.  *State, Dep't of Transp. & Dev. v. Williamson*, 597 So.2d 439, 441 (La. 1992).
In response to the City Defendants' motion, Plaintiffs have not identified any statute or contract
that authorizes them to recover attorney's fees pursuant to Louisiana law.  Furthermore,
attorney's fees are not recoverable under Louisiana law in tort cases.  *Hall v. St. Helena Par.
Sheriff's Dep't*, 668 F. Supp. 535, 541 (M.D. La.1987), *affirmed*, 862 F.2d 872 (5th Cir. 1988).

The court notes that other Defendants did not file their own motion for dismissal of the
state law claims for punitive damages, compensatory damages, and attorney's fees.  However,
where a defending party establishes that a plaintiff has no cause of action, this defense should
inure to similarly situated defendants.  *See Lewis v. Lynn,* 236 F.3d 766, 768, 236 F.3d 766 (5th
Cir. 2001) (citations omitted).  Accordingly, the court will recommend dismissal, sua sponte,
Plaintiffs' state law claims for punitive damages, compensatory damages, and attorney's fees, as
to all Defendants.[10]

## IV.   Amendment

At the conclusion of their brief, Plaintiffs requested another opportunity to amend their
complaint, "in the interest of Justice."  Certainly, a court is required to freely grant leave to
amend when justice so requires it.  FED. R. CIV. P. 15(a)(2).  Here, however, Plaintiffs already
have amended their complaint once.  Moreover, a court may deny leave when the Plaintiffs
neither provide a copy of the proposed amended complaint, nor explain how the proposed

---

[10] The court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v.
Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626,
630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report
and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of
Family and Protective Services*, 427 Fed. App'x. 309 (5th Cir. 2011) (sua sponte dismissal on
11th Amendment grounds).

pleading would cure the deficiencies in the initial complaint.  *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Plaintiffs' conditional request for leave to file a theoretical, second amended complaint to set forth unspecified facts does not comply with Rule 15 and is DENIED.[11]

### Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that the motion to dismiss [doc. # 20] filed by the City Defendants be GRANTED as follows:

1) That Plaintiffs' individual capacity claims against Chief Victor Zordan and Officer Jonathan Daniel (a/k/a "Daniels") be DISMISSED, without prejudice, for lack of personal jurisdiction and insufficient service of process.  FED. R. CIV. P. 12(b)(2) and (5).

2) That Plaintiffs' claims against the Monroe City Council, plus their official capacity claims against Mayor Friday Ellis, Chief Victor Zordan, and Officer Jonathan Daniel (a/k/a "Daniels") be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).

3) That Plaintiffs' federal law claims under 42 U.S.C. § 1983, including punitive damages, and their state law direct negligence claims only against the City of Monroe be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted.   FED. R. CIV. P. 12(b)(6).

4) That Plaintiffs' claims under state law for punitive damages, exemplary damages, and attorney's fees be DISMISSED, with prejudice, as to all Defendants.  FED. R. CIV. P. 12(b)(6).

---

[11] Because the recommended disposition of the instant motion disposes of less than all claims and parties, it is not a final judgment and therefore, remains subject to revision at any time before conclusion of the case.  FED. R. CIV. P. 54(b).  Consequently, if Plaintiffs uncover facts sufficient to support a dismissed claim, then they may file a motion for reconsideration of the court's dismissal of those claims, together with a proposed amended complaint.  It goes without saying, however, that Plaintiffs may not dither in their efforts.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 15th day of March, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

29