UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DAVID GREEN ET AL** | **CASE NO. 3:22-CV-00884** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 101] filed by Defendants, Officers Lawrence Moore ("Moore") and Russell McCall ("McCall") ("collectively, "Defendants"). Plaintiffs, David Green, David Ruff, Ladizya Tillman, Dakedra Jones, Dailour McFee, Ladaveon McFee, and Debra Bailey, on behalf of her minor child, J.B. (collectively, "Green") filed an Opposition [Doc. No. 109], and Defendants filed a Reply [Doc. No. 113].

For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTS AND PROCEDURAL BACKGROUND

On one clear-skied sunny day, a man was seen wandering in the middle of a road. Just a few hours later, he tragically wound up dead. In short form, this is what happened. On April 3, 2021, Officer Jonathan Daniel ("Officer Daniel") of the City of Monroe's Police Department spotted David Harris ("Harris") walking in the middle of a street holding up traffic.[1] Officer Daniel quickly detained Harris and was advised by a passerby that Harris suffered from mental illness.[2] Officer Daniel then drove Harris to Ochsner LSU Health-Monroe for medical care.[3] However,

---

[1] [Doc. No. 2].
[2] [Doc. No. 101-2, p. 1].
[3] [Id.].

Harris refused to get out of the patrol car when they arrived at the hospital.[4] Two other police officers, Lawrence Moore and Russell McCall, came to aid Officer Daniel.[5] Harris was then forcibly removed from the vehicle, but continued to resist being put on the hospital stretcher.[6] Over the next twelve minutes, Harris was held down to the ground and tasered several times.[7] And the only known video footage of the incident came from a camera strapped to Officer Daniel's uniform. Though the hospital's medical staff were present at the scene, Harris was later carried back to the patrol car and transported to Ouachita Correctional Center, where he died shortly after.[8]

On April 2, 2022, Harris' family—including David Green— filed suit against Officers Moore, McCall, and others, seeking recovery under 42 U.S.C. §1983, §1988, and Louisiana Civil Code Articles 2315 and 2317.[9] In the course of litigation, Green offered the expert opinion of Dr. William Anderson ("Dr. Anderson") in support of the position that Officers Moore and McCall caused Harris' death, an essential element of his claims. Dr. Anderson later testified that only a knee placed on the back of a neck with significant force could have caused Harris' fatal injuries.[10]

On January 3, 2025, Officers Moore and McCall filed the pending Motion,[11] asserting that no genuine issue of material fact exists and that they are entitled to summary judgment as to: (1) any claims against them in their *official* capacities, (2) any wrongful death claims arising under §1983, and (3) any claims arising under Article 2315 of the Louisiana Civil Code.[12] Green opposes the Motion and argues that there is a genuine dispute of material facts as to those claims.[13]

---

[4] [Id.].
[5] [Id.].
[6] [Doc. No. 110, p. 1].
[7] [Id., p. 2].
[8] [Id.].
[9] [Doc. Nos, 1, 2].
[10] [Doc. No. 101-3, p. 6].
[11] [Doc. No. 101].
[12] [Id.].
[13] [Doc. Nos. 109, 110].

The issues have been briefed and the Court is prepared to rule.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id*. at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in

favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. The Eleventh Amendment

As a preliminary matter, Officers Moore and McCall seek absolute immunity for any claims against them in their *official* capacities.[14] The Eleventh Amendment grants States sovereign immunity from federal suits "unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984)). The State of Louisiana has explicitly declined to waive its Eleventh Amendment sovereign immunity. La. R.S. §13:1506(A). And while 42 U.S.C §1983 "provides a federal forum to remedy many deprivations of civil liberties," the statute does not disturb the Eleventh Amendment's protections. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Bear in mind that a suit against a state employee in his *official* capacity is, in essence, a suit against the State. *Id*. at 71. Thus, such suits are similarly entitled to sovereign immunity. *Id*.

However, the *Ex Parte Young* doctrine offers an exception. A state employee may be sued in their *official* capacity when the suit only seeks "injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 72 (1996). As a result, the exception applies only when the suit seeks *prospective* relief for an *ongoing* federal violation.

---

[14] [Doc. No. 101-2, p. 2-4].

*Green*, 474 U.S. at 67. And the exception only reaches violations of *federal* law rather than *state* law. *Earles v. State Bd. of Certified Pub. Accts. of Louisiana*, 139 F.3d 1033, 1039 (5th Cir. 1998). In other words, the *Ex Parte Young* doctrine only applies when a suit against a state employee seeks non-monetary injunctive relief for a continuing federal violation.

As to Officers Moore and McCall, Green sued them in their *official* capacities under 42 U.S.C. §1983, §1998, and state law.[15] But Green completely ignores whether sovereign immunity bars such claims. Instead, Green cites legal jurisprudence addressing *individual* capacity liability and qualified immunity. In essence, Green does not contest—let alone offer contrary evidence— that sovereign immunity rids any claims against Officers Moore and McCall in their *official* capacities.

Even if Green properly addressed sovereign immunity, it is clear that the Eleventh Amendment offers some protection for Officers Moore and McCall. The §1983 and §1988 claims against them in their *official* capacities center on Harris' death rather than any ongoing violation of federal law. Nor does Green seek any prospective non-monetary relief. So those federal claims fall outside of the *Ex Parte Young* ambit. And the Eleventh Amendment's protections reach over Green's state law claims as well. *Earles*, 139 F.3d at 1039. Accordingly, the claims against Officers Moore and McCall in their *official* capacities fall under sovereign immunity.

Therefore, the Motion is **GRANTED** to the extent it seeks sovereign immunity against any claims against Officers Moore and McCall in their *official* capacities.

### C.  42 U.S.C. § 1983

Next, Officers Moore and McCall want to dispose of Green's §1983 wrongful death claim.[16] Green previously offered the expert opinion of Dr. Anderson, a forensic pathologist, to

---

[15] *See generally* [Doc. No. 2].
[16] [Doc. No. 101-2, p. 4].

show how Officers Moore and McCall could have caused the injury that led to Harris' death.[17] After conducting an autopsy, Dr. Anderson testified that only a "hard knee to a prone individual" could have caused Harris' fatal neck injuries.[18] On that basis, Officers Moore and McCall point to the Officer Daniel's bodycam footage to claim that the recording confirms that neither of the officers ever forced their knee upon Harris' neck.[19] In effect, the footage may prove that they did not cause Harris' death.

A plaintiff seeking recovery on a §1983 wrongful death claim must prove both (1) an alleged constitutional deprivation and (2) the "causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264 (5th Cir. 2016). In other words, state law determines whether there is a causal link between the constitutional deprivation and the victim's death for §1983 wrongful death claims.

In Louisiana, "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *James v. Lincoln Gen. Ins. Co.*, No. CIV.A. 09-0727, 2011 WL 3610800, at *4 (W.D. La. Aug. 15, 2011) (cleaned up). And when a plaintiff alleges "causation of an injury or condition outside of common knowledge," the plaintiff survives summary judgment only by producing "competent medical evidence that, when combined with other direct and circumstantial evidence, allows a jury to rationally infer" that the defendant caused the injury. *Perry v. City of Bossier City*, No. CV 17-0583, 2019 WL 1782482, at *4 (W.D. La. Apr. 23, 2019). In this instance, Officers Moore and McCall stress that Dr. Anderson's

---

[17] [Doc. Nos. 101-3, 107-8, 107-9].
[18] [Doc. No. 101-3, p. 6].
[19] [Doc. No. 101-2, p. 5-7].

testimony, combined with the bodycam footage of the incident, "unequivocally proves" that they did not cause the injuries that led to Harris' death.[20]

Before all else, while Dr. Anderson's testimony remains crucial for Green's §1983 claim, Green opposes summary judgment on a different basis. In fact, Green nearly ignores Dr. Anderson totally. Instead, Green offers the unsworn and unsigned report by Timothy Dixon ("Dixon"), an attorney and former officer of the Baltimore Police Department.[21] Dixon purports to interpret Dr. Anderson's medical conclusions, clarify general policing practices, and instruct the Court on Fourth Amendment jurisprudence.[22] But Green's reliance on Dixon is puzzling at best.

For starters, Dixon is not a medical expert sufficiently qualified to form an opinion on Dr. Anderson's report. *See* Fed. R. Evid. 702. Second, Dixon's report is primarily centered on judging whether the arrest was reasonable. Yet that's irrelevant if Green cannot prove causation. Finally, Dixon seemingly tries to aid the Court by summarizing caselaw. But the Court owes no consideration, let alone deference, to an affiant's lecture of the law. Simply put, Green's reliance on Dixon's report presents little guidance on whether summary judgment is appropriate.

Now back to the bodycam footage. Officers Moore and McCall attest that the video "captures the entirety" of the incident.[23] But the video is not as revealing as they make it out to be. The only footage offered to the Court is from Officer Daniel's camera. And the incident lasted around twelve minutes—from the moment Harris was yanked out of the vehicle to the moment he was carried back into it.[24] Officers Moore and McCall claim that the video "clearly fails to demonstrate a 'drop-kick' or knee to the back of Harris' neck."[25] Yet Harris' entire upper body—

---

[20] [Id., p. 5].
[21] [Doc. No. 110-3].
[22] [Id.]. For instance, Dixon's report summarizes and extensively opines on the Fourth Amendment's "objective reasonableness" standard articulated in *Graham v. Connor*, 490 U.S. 386 (1989).
[23] [Doc. No. 101-2, p. 6].
[24] [Doc. No. 107-5].
[25] [Doc. No. 101-2, p. 7].

including his neck—and one of the officers were entirely out of the camera's view for five out of those twelve minutes.[26] Nor were these just *any* five minutes. Right before, Officer Daniels instructed Officers Moore and McCall to "hold his head."[27] Harris' top half and either Officer Moore or McCall then exited the camera's view for the next five minutes while the other officer placed their knee on Harris' lower end to restrain him. When Harris appeared on camera again minutes later, blood is splashed across the cement where his face presumably laid.[28] And Harris' condition seemingly worsened during those five minutes to the point that he could no longer stand and had to be carried by approximately four or five officers back into the patrol car.[29]

What happened throughout those five minutes remains unknown. Again, the Court must "draw all permissible inferences in favor of the nonmoving party." *Total E & P USA Inc.*, 719 F.3d at 434. And the burden to produce evidence shifts to the nonmoving party only *after* the movant meets their initial burden of showing the absence of a genuine issue of material fact. *Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). But Officers Moore's and McCall's evidence does pass that initial hurdle. Although what happened in those five minutes is not clear, what is clear is that a reasonable jury viewing that footage could return a verdict favoring Green.

Therefore, the Motion is **DENIED** to the extent it seeks to discard Green's §1983 wrongful death claims.

### D. Article 2315 of the Louisiana Civil Code

Finally, Officers Moore and McCall say that Green cannot sustain a state law claim arising under Article 2315 of the Louisiana Civil Code against them.[30] And the rationale is all too familiar:

---

[26] [Doc. No. 107-5]. Labeled under "Exhibit C-2," the relevant timeframe is 0:05:16 to 0:09:57.
[27] [Id., at 0:05:11].
[28] [Id., at 0:10:04].
[29] [Id., at 0:12:13-0:12:57].
[30] [Doc. No. 101-2, p. 7-8].

Dr. Anderson's testimony, combined with the bodycam footage of the incident, proves that their actions did not cause Harris' death. But even if Green could recover under the statute, Officers Moore and McCall still take issue with Green seeking damages not available under the statute, including punitive damages, exemplary damages, and attorney fees.[31] Meanwhile, Green points to Article 2316—an entirely different statute—to claim that the statutes should be read together and grant more rights than Officers Moore and McCall presume.[32]

This one is fairly straightforward. A person can be liable under Article 2315 only if they *caused* the harm. La. Civ. Code 2315(A). And Article 2316 does not change that requirement. *MJH Properties, L.L.C. v. Farley*, 382 So. 3d 910, 916 (La. App. 4 Cir. 10/4/23). Officers Moore and McCall claim that the video verifies that they did not cause Harris' death. But as already mentioned, the video fails to capture the entire interaction and leaves remaining the genuine question as to whether Officers Moore and McCall caused Harris' death. To that end, summary judgment is unwarranted.

However, Officers Moore and McCall are correct that Green cannot recover punitive damages, exemplary damages, and attorney fees. In fact, the Court has already extensively considered and dismissed such claims and finds no reason to amend its prior ruling.[33]

Therefore, the Motion is **DENIED** to the extent it seeks to discard Green's La. Civ. Code art. 2315 claim entirely. However, the Motion is **GRANTED** to the extent it seeks to exclude any punitive damages, exemplary damages, and attorney fees under the statute.

### III.   CONCLUSION

For the reasons stated above,

---

[31] [Id., p. 8].
[32] [Doc. No. 110, p. 6-7].
[33] [Doc. Nos. 49, 58].

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, that Defendant's Motion for Summary Judgment [Doc. No. 101] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** to the extent it seeks sovereign immunity against any claims against Defendants in their *official* capacities.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** to the extent it seeks to discard Plaintiffs' §1983 wrongful death claims.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** to the extent it seeks to discard Plaintiffs' La. Civ. Code art. 2315 claim entirely.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** to the extent it seeks exclude any punitive damages, exemplary damages, and attorney fees under La. Civ. Code art 2315.

MONROE, LOUISIANA, this 13th day of March, 2025.

Terry A. Doughty
United States District Judge