UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

DAVID GREEN ET AL                    CASE NO.  3:22-CV-00884

VERSUS                               JUDGE TERRY A. DOUGHTY

CITY OF MONROE ET AL                 MAG. JUDGE KAYLA D. MCCLUSKY

<u>MEMORANDUM RULING</u>

Before the Court is a Motion for Summary Judgment [Doc. No. 103] filed by Defendant BRFHH MONROE, L.L.C. D/B/A/ OCHSNER LSU HEALTH-MONROE ("Ochsner"). Plaintiffs David Green, David Ruff, Ladizya Tillman, Dakedra Jones, Dailour McFee, Ladaveon McFee, and Debra Bailey, on behalf of her minor child, J.B. (collectively, "Green") filed an Opposition [Doc. No. 114], and Ochsner filed a Reply [Doc. No. 118].

For the reasons stated below, the Motion is **GRANTED**.

I.    FACTS AND PROCEDURAL BACKGROUND

On one clear-skied sunny day, a man was seen wandering in the middle of a road. Just a few hours later, he tragically wound up dead. In short form, this is what happened. On April 3, 2021, Officer Jonathan Daniel ("Officer Daniel") of the City of Monroe's Police Department spotted David Harris ("Harris") walking in the middle of a street holding up traffic.[1] Officer Daniel quickly detained Harris and was advised by a passerby that Harris suffered from mental illness.[2] Officer Daniel then drove Harris to Ochsner's hospital facility for medical care.[3] However, Harris refused to get out of the patrol car when they arrived at the hospital.[4] Two other police officers,

---

[1] [Doc. No. 2].
[2] [Doc. No. 114-2, p. 1].
[3] [Doc. No. 103-1, p. 1].
[4] [Doc. No. 114-2, p.1].

Lawrence Moore and Russell McCall, came to aid Officer Daniel.[5] Harris was then forcibly removed from the vehicle, but continued to resist being put on the hospital stretcher.[6] Over the next twelve minutes, Harris was held down to the ground and tasered several times.[7] And the only known video footage of the incident came from a camera strapped to Officer Daniel's uniform. Though Ochsner's medical staff were present at the scene and witnessed the entire incident, Harris was carried back to the patrol car and transported to Ouachita Correctional Center, where he died shortly after.[8]

On April 2, 2022, Harris' family—including David Green—filed suit against Ochsner, and others, seeking recovery under 42 U.S.C. § 1983, § 1988, and Louisiana Civil Code Articles 2315 and 2317.[9] In the course of litigation, Green offered the expert opinion of Dr. William Anderson ("Dr. Anderson"), who testified that only a knee placed on the back of a neck with significant force could have caused Harris' fatal injuries.[10]

On January 8, 2025, Ochsner filed the pending Motion[11] asserting that no genuine issue of material fact exists and that they are entitled to summary judgment as to the following claims: (1) wrongful death under 42 U.S.C. §§ 1983 and 1988, (2) survival action under 42 U.S.C. §§ 1983 and 1988, (3) state law negligence under Articles 2315 and 2317 of the Louisiana Civil Code, (4) assault and battery, and (5) any remaining state law claim for punitive damages, exemplary damages, or attorney fees.[12] Green opposes the Motion and argues that there is a genuine dispute of material facts as to those claims.[13]

---

[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id.].
[9] [Doc. Nos, 1, 2].
[10] [Doc. Nos. 103-6, 114-3].
[11] [Doc. No. 103].
[12] [Id.].
[13] [Doc. No. 114].

The issues have been briefed and the Court is prepared to rule.

## II.   LAW & ANALYSIS

### A.  Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id*. at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in

favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. The Wrongful Death Claim

When a plaintiff brings a wrongful death claim under 42 U.S.C. §§ 1983 and 1988, the Court must apply "the most analogous state law." *Matis v. Joseph*, No. CIV. A. 05-2615, 2008 WL 3850489, at *1 (E.D. La. Aug. 14, 2008). In this instance, Louisiana Civil Code Article 2315.2 operates as the most analogous state law and provides the wrongful death cause of action. The statute requires that the decedent died "due to the fault of another." La. Civ. Code 2315.2(A). And when a plaintiff alleges "causation of an injury or condition outside of common knowledge," the plaintiff survives summary judgment only by producing "competent medical evidence that, when combined with other direct and circumstantial evidence, allows a jury to rationally infer" that the defendant caused the injury. *Perry v. City of Bossier City*, No. CV 17-0583, 2019 WL 1782482, at *4 (W.D. La. Apr. 23, 2019).

With that in mind, Ochsner emphasizes that Green cannot show that the hospital caused or was in any way at fault for Harris' death.[14] Specifically, Green allegedly lacks any evidence to show that any of Ochsner's employees caused Harris' neck injuries, and Dr. Anderson's testimony is silent as to whether Ochsner caused or contributed to Harris' neck injuries and resulting death.[15]

---

[14] [Doc. No. 103-1, p. 5].
[15] [Id., p. 6].

4

That said, Green still alleges that Ochsner's failure to immediately treat Harris caused or otherwise contributed to his death.[16] Green also points to Louisiana Revised Statute 28.63(C)(1)(b) which immunizes hospitals from liability following a patient's death "unless the damage or injury was caused by willful or wanton negligence or gross misconduct."[17] In that regard, Green primarily relies on Dr. Anderson's autopsy report[18] and the unsworn and unsigned report by Timothy Dixon ("Dixon")—an attorney and former officer of the Baltimore Police Department.[19] But neither Dr. Anderson nor Dixon aid Green's claim.

For starters, Dr. Anderson traces Harris' death to "complications of blunt force trauma" involving the neck and cervical spinal cord.[20] And he later specifies that a "hard knee to a prone individual" led to the fatal injury.[21] Dr. Anderson does not allege that Ochsner could have provided sufficient medical aid to save Harris. In fact, he never opined how Ochsner relates to Harris' death. So while Dr. Anderson's autopsy report and testimony showed *what* caused Harris' death, it offered nothing to prove that Ochsner played a role in causing the death or could have prevented it from occurring.

As to Dixon, the Court has already made clear that he is not a medical expert sufficiently qualified to form an opinion on Dr. Anderson's autopsy report and subsequent findings.[22] And Ochsner contests Dixon's report as inadmissible hearsay.[23] But even if the Court considered Dixon's report, his only relevant admission is that hospital staff was present with a stretcher at the

---

[16] [Doc. No. 114-2, p. 4].
[17] [Id.]; La. R.S. 28:63(C)(1)(b).
[18] [Doc. No. 114-3, p. 4].
[19] [Id., p. 1-3].
[20] [Id., p. 4].
[21] [Doc. No. 103-6, p. 8].
[22] [Doc. No. 121, p. 7].
[23] [Doc. No. 118, p. 1]. For the reasons apparent in this ruling, the Court does not need to immediately determine at whether Dixon's report is inadmissible hearsay. However, the Court will consider the objection should the need later arise.

scene and could have taken Harris inside the hospital."[24] But Ochsner's ability to merely *take* Harris inside the hospital does not prove that Ochsner could have mitigated Harris' injuries let alone salvage his life.

Again, the plaintiff must provide "competent medical evidence" to support a finding that the defendant caused the injury or death. *Perry*, 2019 WL 1782482, at *4. Yet Green offers none of that. Instead, Green has only thrown blanket accusations at Ochsner without any actual evidence that the hospital caused or contributed to Harris' death. Put another way, it is clear that Ochsner did not attempt to save Harris. And perhaps Green is too focused on litigating that Ochsner should have tried to save Harris. But that is beside the point without any evidence showing that Ochsner could have, in fact, saved Harris' life. Why? Because the statute requires Ochsner to be "at fault." La. Civ. Code 2315.2(A). Yet Green offered no evidence to make that showing.

Therefore, the Motion is **GRANTED** to the extent it seeks to discard all federal wrongful death claims against Ochsner.[25]

### C.  The Survival Action Claim

The same rings true for Green's survival action under 42 U.S.C. §§ 1983 and 1988. Like wrongful death actions, since § 1983 "does not on its face set forth a survival action," the Court must look to the most analogous state law. *Matis*, 2008 WL 3850489 at *1. Louisiana Civil Code Article 2315.1 provides the survival action. And by the statute's plain terms, only the damages "caused by the offense" are recoverable. La. Civ. Code 2315.1. Green's survival action against Ochsner relies on the same accusation that the hospital caused or otherwise contributed to Harris'

---

[24] [Doc. No. 114-3, p. 2].

[25] It is unclear whether Green sought to raise a separate claim under La. R.S. 28:63(C)(1)(b). But if so, the reason to dispense with that claim would be same. The statute holds hospitals liable when the "damage or injury was *caused* by willful or wanton negligence or gross misconduct." *Id*. (emphasis added). Green's evidence is absolutely silent on how Ochsner's conduct—whether willful or negligent—caused Harris' injuries and subsequent death.

death.[26] But as already mentioned, Green has provided no evidence that Ochsner's actions played a role in Harris' demise. As a result, summary judgment is the only remedy to dispense with Green's unsubstantiated claim. *See Little*, 37 F.3d at 1075 ("the nonmovant must go beyond the pleadings and designate specific facts" rather than "unsubstantiated assertions.")

Therefore, the Motion is **GRANTED** to the extent it seeks to discard all federal survival action claims against Ochsner.

### D. The State Law Negligence Claim

Next, the Court turns to Green's state law negligence claims. "Under Louisiana's standard negligence analysis, the plaintiff must prove that (1) "the defendant had a duty to conform his conduct to a specific standard," (2) "the defendant's conduct failed to conform to the appropriate standard," (3) "the defendant's substandard conduct was a cause in fact of the plaintiff's injuries," (4) "the defendant's substandard conduct was a legal cause of the plaintiff's injuries," and (5) "the plaintiff suffered actual damages." *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)). The defendant is not liable if the plaintiff fails to satisfy any of these five requirements. *Pitre v. Louisiana Tech Univ.*, 673 So. 2d 585, 590 (La. 1996).

There's no need to determine whether Ochsner owed a duty to Harris and if that duty has been breached when it's already clear that Green has not proved that the hospital's conduct *caused* Green's death.[27] *See id*. Absent such showing, Green's state law negligence claims cannot succeed.

---

[26] [Doc. No. 2, ¶¶ 33-37].

[27] In defending his negligence claims, Green says that Ochsner violated the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. §1395dd, by failing to provide Harris with emergency care. But Green's reliance on the federal statute is misplaced and a complete detour. This is the first time that Green has brought up EMTALA. The Fifth Circuit has recognized two different approaches to legal claims raised for the first time in response to a motion for summary judgment. "The first approach states that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021) (internal quotations omitted). "The second approach instructs the district court to treat a new claim … as a request for leave to amend. The district court must then determine whether leave should

Therefore, the Motion is **GRANTED** to the extent it seeks to discard all negligence claims against Ochsner arising under Articles 2315 and 2317 of the Louisiana Civil Code.

### E.  The Assault and Battery Claim

Green's Amended Complaint alleges that "Defendant *Officers* assaulted and battered the decedent, injuring decedent."[28] (emphasis added). A battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). And an assault is "the imminent threat of a battery." *Terrell v. Pichon*, 413 F. Supp. 3d 515, 522 (E.D. La. 2019), *aff'd*, 795 F. App'x 935 (5th Cir. 2020).

Ochsner is a hospital, not an officer. Likewise, Green appears to agree that Officers Moore and McCall were not employed by the hospital. But as a cautionary measure, Ochsner still seeks summary judgment should the allegation be read as directed at the hospital. Green has provided no evidence to support an assault and battery claim against Ochsner.

Therefore, the Motion is **GRANTED** to the extent it seeks to discard all claims of Assault and Battery against Ochsner.

---

be granted." *Id.* Whether the proposed amendment would be "futile" is relevant to the inquiry. *Id.* Under the first approach, the EMTALA defense can be swiftly disregarded. And under the second approach, adding the new claim would not aid Green. "EMTALA was enacted to combat 'patient dumping,' the practice of some hospitals turning away or transferring *indigent* patients without evaluation or treatment." *Texas v. Becerra*, 89 F.4th 529, 533 (5th Cir. 2024) (emphasis added). In other words, EMTALA sought to address the "dumping" of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them. *Thornhill v. Jackson Par. Hosp.*, 184 F. Supp. 3d 392, 401 (W.D. La. 2016). Green cites no authority that expands EMTALA's purview to include situations where a hospital does not intervene in an arrest outside its premises to render medical aid. On that basis, Green has not established that his EMTALA defense is not frivolous or warrants any consideration. Additionally Green threw in at least three more statutes for good measure—and similarly for the first time during this suit. These statutes were 42 C.F.R. § 489.24, 42 C.F.R. § 489.20, and La. R.S. 40.1231.1. But Green has provided no caselaw or evidence showing that any of these statutes are applicable to the case before the Court. Therefore, these statutes will not be considered for this Motion's ruling.

[28] [Doc. No. 2, ¶ 43].

### F.  The Remaining Claim for Damages

Finally, Ochsner is correct that Green cannot recover punitive damages, exemplary damages, and attorney fees. In fact, the Court has already extensively considered and dismissed such claims and finds no reason to amend its prior ruling.[29]

Therefore, the Motion is **GRANTED** to the extent it seeks to exclude any punitive damages, exemplary damages, and attorney fees against Ochsner.

## III.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, that Defendant's Motion for Summary Judgment [Doc. No. 103] is **GRANTED**.

MONROE, LOUISIANA, this 26th day of March, 2025.



Terry A. Doughty
United States District Judge

---

[29] [Doc. Nos. 49, 58].