UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DAVID GREEN ET AL** | **CASE NO. 3:22-CV-00884** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF MONROE ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 107] filed by Defendant the City of Monroe ("the City"). Plaintiffs David Green, David Ruff, LaDaizya Tillman, Dakedra Jones, Dailour McFee, Ladaveon McFee, and Debra Bailey, on behalf of her minor child, J.B. (collectively, "Green") filed an Opposition [Doc. No. 120], and the City filed a Reply [Doc. No. 126].

For the reasons stated below, the Motion is **GRANTED**.

### I. FACTS AND PROCEDURAL BACKGROUND

On one clear-skied sunny day, a man was seen wandering in the middle of a road. Just a few hours later, he tragically wound up dead. In short form, this is what happened. On April 3, 2021, Officer Jonathan Daniel ("Officer Daniel") of the City of Monroe's Police Department spotted David Harris ("Harris") walking in the middle of a street holding up traffic.[1] Officer Daniel quickly detained Harris and was advised by a passerby that Harris suffered from mental illness.[2] Officer Daniel then drove

---

[1] [Doc. No. 120-2, p.1].
[2] [Id.].

Harris to a hospital for medical care.[3] However, Harris refused to get out of the patrol car when they arrived at the hospital.[4] Two other police officers, Lawrence Moore and Russell McCall, came to aid Officer Daniel.[5] Harris was then forcibly removed from the vehicle, but continued to resist being put on the hospital stretcher.[6] Over the next twelve minutes, Harris was held down to the ground and tasered several times.[7] And the only known video footage of the incident came from a camera strapped to Officer Daniel's uniform. Though hospital staff were present at the scene and witnessed the entire incident, Harris was carried back to the patrol car and transported to Ouachita Correctional Center ("OCC"), where he died shortly after.[8]

On April 2, 2022, Harris' family—including David Green—filed suit against the City, as Officer Daniel's employer, seeking recovery under Louisiana Civil Code Articles 2315 and 2317.[9] In the course of litigation, Green offered the expert opinion of Dr. William Anderson ("Dr. Anderson"), who testified that only a knee placed on the back of a neck with significant force could have caused Harris' fatal injuries.[10]

On January 16, 2025, the City filed the pending Motion[11] asserting that no genuine issue of material fact exists and that it is entitled to summary judgment as to the remaining state-law wrongful death and survival claims. Green opposes the

---

[3] [Id.].
[4] [Id.].
[5] [Id.].
[6] [Id.].
[7] [Id.].
[8] [Id., p. 2].
[9] [Doc. Nos. 1, 2]. Green previously sought recovery against the City under other federal and state claims but they were dismissed by this Court. [Doc. Nos. 49, 58].
[10] [Doc. No. 107-9, p. 8].
[11] [Doc. No. 107].

Motion and argues that there is a genuine dispute of material facts as to those claims.[12]

The issues have been briefed and the Court is prepared to rule.

## II. LAW & ANALYSIS

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[12] [Doc. No. 120].

But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. The State Law Claims & Employer Liability

Green's only remaining claims against the City are state-law wrongful death and survival claims based on Officer Daniel's actions.[13] These claims stem from Articles 2315.1, 2315.2, and 2316 of Louisiana's Civil Code.[14] Article 2315.1 provides

---

[13] [Doc. No. 2, p. 15-19]; [Doc. No. 49, p. 26, n.8]; [Doc. No. 107-2, p. 14].
[14] Green originally pointed to Article 2317 of the Louisiana Civil Code in his Complaint rather than Article 2316. [Doc. No. 2, 15-18]. Article 2317 states that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." However, Green never mentioned Article 2317 in his Opposition to the City's pending Motion, and he has failed to provide a sufficient basis as to how Article 2317 could in any way support his claims. Instead, Green uses his Opposition to allege that the City may be liable under Article 2316.

4

Green's survival action, whereas Article 2315.2 sets out Green's wrongful death claim. La. Civ. Code. 2315.1, 2315.2. And Article 2316 "merely enlarges the provisions of Article 2315 so as to include acts of negligence, imprudence, or want of skill." *Young v. McCullium*, 74 So. 2d 339, 340 (La. App. 1 Cir. 1954).

The common thread that traces liability across these three statutes is that the defendant must have caused the offense. *Marburger v. Axiall Corp.*, No. 2:15-CV-2354, 2016 WL 5817472, at *3 (W.D. La. Sept. 29, 2016). For instance, the plain terms of Article 2315.1 says that only the damages "caused by the offense" are recoverable. La. Civ. Code 2315.1. Article 2315.2 requires that the decedent died "due to the fault of another." La. Civ. Code 2315.2(A). And Article 2316 requires proof that the defendant's actions caused the harm. *Vicknair v. Hibernia Bldg. Corp.*, 479 So. 2d 904, 908 (La. 1985). A plaintiff can prove that the defendant caused the injury by showing either (1) that the decedent would not have died but for the defendant's conduct, or (2) that the defendant's conduct was a "substantial factor" in bringing about the decedent's death. *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991).

Though Green's allegations center on Officer Daniel's conduct, the cause of action is levied at the City because an employer is liable for a tort committed by its employee when the employee was acting within the course and scope of his employment. *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996). Green and the City agree that Officer Daniel is an employee of the City and was working within the course and scope of his employment during the incident that led to Harris' death. Bear in mind that the City can only be held liable if Officer Daniel is found to be liable

5

in the first instance. *Kyser v. Metro Ambulance, Inc.*, 764 So. 2d 215, 218 (La. App. 2 Cir. 2000). So the analysis must start with Officer Daniel—not the City.

### C. Officer Daniel's Liability

Green's claims against Officer Daniel (and the City) relies on two alternative theories of liability: (1) excessive force and (2) failure to provide medical care. In other words, Green says that Officer Daniel and the City are liable for Harris' death because Officer Daniel used excessive force during Harris' arrest,[15] and/or because Officer Daniel failed to give Harris "readily available" medical attention.[16] However, Green can only prevail under either of these two theories by raising evidence that Officer Daniel's alleged actions *caused* Harris' death.

In Louisiana, "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *James v. Lincoln Gen. Ins. Co.*, No. CIV.A. 09-0727, 2011 WL 3610800, at *4 (W.D. La. Aug. 15, 2011) (cleaned up). When a plaintiff alleges "causation of an injury or condition outside of common knowledge," the plaintiff survives summary judgment only by producing "competent medical evidence that, when combined with other direct and circumstantial evidence, allows a jury to rationally infer" that the defendant caused the decedent's death. *Perry v. City of Bossier City*, No. CV 17-0583, 2019 WL 1782482, at *4 (W.D. La. Apr. 23, 2019). In this instance, the City insists that Green's theories

---

[15] [Doc. No. 120-2, p. 5].
[16] [Id., p. 4].

6

of excessive force and failure to provide medical care lacks any evidentiary support and does not meet his burden to show that Officer Daniel caused Harris' death.[17]

The Court will address each theory separately.

### 1. Excessive Force

Green claims that Officer Daniel used excessive force by repeatedly grabbing, pushing, shoving, and tasering Harris throughout the altercation.[18] But whether Officer Daniel used excessive force is irrelevant to Green's remaining state law claims absent any evidence that such force caused Harris' death. Green's medical expert, Dr. Anderson, testified that only a "hard knee to a prone individual" could have caused Harris' fatal neck injuries.[19] In fact, Dr. Anderson conceded that the taser had no part in Harris' death,[20] and even if Officer Daniel grabbed him by the neck, it wouldn't have caused Harris' fatal injuries.[21] This testimony came from Green's own expert witness.

With that in mind, even if Officer Daniel used excessive force, Green must still show that the conduct caused Harris' death. And based on Dr. Anderson's testimony, that means providing evidence that Officer Daniel pressed his knee down Harris' neck. However, it does not appear that Green ever alleged that Officer Daniel placed his knee on Harris' neck. Even if he did, the Court is not bound to adopt Green's

---

[17] [Doc. No. 107-2, p. 27].
[18] [Doc. No. 120-2, p. 5].
[19] [Doc. No. 107-9, p. 8].
[20] [Id., p. 6].
[21] [Id., p. 8].

7

"version of the facts" when it is contradicted by "video evidence available in the record." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014).

On that basis, Officer Daniel's bodycam footage clearly shows that he never placed his knee on Harris' neck.[22] Yet Green's response[23] is to rely on the unsworn and unsigned report by Timothy Dixon ("Dixon")—an attorney and former officer of the Baltimore Police Department.[24] Twice already this Court has discounted Dixon's Report as unhelpful, unreliable, unrelated, and likely inadmissible.[25] The same rings true once more.

Since Green has not provided any evidence to show that Officer Daniel placed his knee on Harris' neck, Green has failed to show that Officer Daniel's alleged excessive force caused Harris' death. Therefore, Green's excessive force theory does not satisfy his burden under Articles 2315.1, 2315.2, and 2316.

## 2. The Failure to Provide Medical Care

Green alleges that Officer Daniel failed to provide reasonable medical care.[26] Specifically, Green thinks that Officer Daniel's decision to take Harris to Ouachita Correctional Center rather than the hospital for medical care caused Harris' demise. Since Green seeks relief under Articles 2315.1, 2315.2, and 2316, even if Officer Daniel failed to provide medical care, Green must still show that Officer Daniel's actions caused or contributed to Harris' death.

---

[22] [Doc. No. 107-5].
[23] For the third time, Green uses Dixon's report to interpret Dr. Anderson's testimony, summarize general policing practices, and instruct the Court on the law.
[24] [Doc. No. 120-3].
[25] [Doc. Nos. 121, 127].
[26] [Doc. No. 20, ¶ 39].

8

Once again, Green ignored that task completely. Dr. Anderson's testimony is silent as to whether Officer Daniel's decision to take Harris to OCC played a role in Harris' death. And Green has provided no evidence to show that Harris would have or could have survived with more or different medical care either at the hospital or at OCC's medical unit. *See Giammanchere v. Ernst*, 742 So. 2d 572, 576 96-2458 (La. App. 4 Cir. 1999).

In other words, since Green has not provided any evidence to show that Officer Daniel's decision to take Harris to OCC caused Harris' death, Green's medical care theory does not satisfy his burden under Articles 2315.1, 2315.2, and 2316.

Green needed "competent medical evidence" to support a finding that Officer Daniel caused Harris' and death. *Perry*, 2019 WL 1782482, at *4. And Green had two theories to support his claims under Articles 2315.1, 2315.2, and 2316: (1) Officer Daniel's alleged excessive force, and (2) Officer Daniel's alleged failure to provide medical care. Yet Green failed to prove that either of those two alleged acts or omissions, even if true, caused or contributed to Harris' death. Consequently, neither Officer Daniel nor the City—his employer—can be liable.

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, that Defendant's Motion for Summary Judgment [Doc. No. 107] is **GRANTED**.

MONROE, LOUISIANA, this 7th day of April, 2025.

                                                          Terry A. Doughty
                                                United States District Judge